DECISION. *Page 2 
{¶ 1} After waiving her right to a jury trial, defendant-appellant Kathy L. Barnett pleaded guilty to one count of theft, a fifth-degree felony, in violation of R.C. 2913.01(A)(1). The trial court sentenced her to ten months in prison. Barnett now appeals, raising two assignments of error.
 {¶ 2} In her first assignment of error, Barnett argues that the trial court inadequately inquired into the sufficiency of her waiver of herSixth Amendment right to a jury trial before accepting her guilty plea. She argues that her waiver was invalid because the trial court failed to orally inform her (1) that a jury was composed of 12 members; (2) that she could participate in the selection of jurors; (3) that the verdict of the jury had to be unanimous, and (4) that a judge alone would decide her guilt or innocence if she waived her jury-trial right. Barnett maintains that, without a valid waiver of the right to trial by a jury, the "trial court was without jurisdiction to accept her guilty plea[,] to enter [the] judgment of conviction against her, and to impose sentence."
 {¶ 3} "A guilty plea waives all claims of the deprivation of constitutional rights which might have occurred prior to the plea. [Citation omitted.] The only attack which may be launched following a guilty plea is on the voluntary and intelligent character of the plea itself. [Citation omitted.] The inquiry `entails a *Page 3 
review of the record to ensure that Crim.R. 11 was followed by the trial court upon the defendant's submission of the guilty plea.'"[1]
 {¶ 4} "In [State v.] Lomax, we held that a `defendant in a felony case, in addition to signing a written waiver, must orally acknowledge that he understands that he is waiving his right to a jury trial.'"[2]
We have declined, however, to dictate how trial courts must conduct this oral colloquy.[3] Thus, contrary to Barnett's assertions, no specific colloquy is constitutionally mandated to determine that a waiver has been knowingly, voluntarily, and intelligently given.[4]
 {¶ 5} In this case, Barnett signed a written jury waiver, which was filed and docketed in compliance with Crim.R. 23(A) and R.C. 2945.05. Barnett also signed a written guilty plea. The trial court orally inquired about Barnett's understanding of both documents. With respect to the jury waiver, the trial court specifically asked Barnett the following: if she had read the waiver and discussed it with her attorney; if she understood what it meant to waive her right to a jury; if she had signed the waiver; if she had any questions regarding the waiver; and if she wished to waive her right to a trial by jury. Barnett answered each of these questions in the affirmative. The trial court then orally reviewed Barnett's guilty-plea form in detail. It conducted a full Crim.R. 11 colloquy, inquiring in detail about Barnett's understanding of the constitutional rights she was waiving. *Page 4 
 {¶ 6} Barnett's execution of a written jury-trial waiver and guilty-plea form, as well as her on-the-record colloquy with the trial court about these documents, was sufficient to notify her about the jury-trial right she was foregoing. Because the record reveals that Barnett's guilty plea was made knowingly, voluntarily, and intelligently, we overrule her first assignment of error.
 {¶ 7} In her second assignment or error, Barnett argues that the trial court's sentence of ten months' incarceration constituted cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.
 {¶ 8} Barnett concedes that the ten-month prison term imposed by the trial court fell within the range of permissible prison terms for a fifth-degree-felony theft offense.[5] She, nonetheless, argues that her sentence was disproportionately severe due to the numerous physical ailments she suffered from. But Ohio appellate courts have uniformly rejected Barnett's argument. They have held that criminal defendants, like Barnett, who are suffering from physical ailments, do not suffer cruel and unusual punishment when they are sentenced to a term of imprisonment, in the absence of evidence that the medical care in prison is inadequate to meet their needs.[6] Barnett has set forth no such argument about inadequate medical care in her brief. *Page 5 
 {¶ 9} The record, moreover, supports the trial court's imposition of a ten-month prison term in lieu of community control. In sentencing Barnett, the trial court stated that Barnett had served a prior prison term for felony theft; that she had been a "habitual offender" at the victim's retail stores, culminating in a two-year ban from its stores; and that she had committed the current theft offense while the ban was still in effect. The trial court found most troubling, however, that Barnett had involved her grandchild in the theft offense by concealing stolen merchandise in her stroller. The trial court also noted that after Barnett was charged with the current offense, she was charged with and convicted of complicity to petty theft in another county.
 {¶ 10} Given this information, the trial court could have logically concluded that the lesser sentence of community control not only would have had a minimally deterrent effect on Barnett, but also would have been disproportionate to her offense. Consequently, we cannot conclude that Barnett's ten-month sentence was so disproportionate as to "shock the sense of justice of the community."[7] Having found no merit to Barrett's contention that her sentence constituted cruel and unusual punishment, we overrule her second assignment of error.
 {¶ 11} Accordingly, we affirm the judgment of the court below.
Judgment affirmed.
HENDON and WINKLER, JJ., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] State v. Woodland, 6th Dist. No. WD-03-044, 2004-Ohio-2772, ¶ 13, quoting State v. Spates, 64 Ohio St.3d 269, 272, 1992-Ohio-130,595 N.E.2d 351.
[2] State v. Obsaint, 1st Dist. No. C-060629, 2007-Ohio-2661, at ¶ 28, quoting State v. Lomax, 166 Ohio App.3d 555, 2006-Ohio-1373,852 N.E.2d 205, at ¶ 1.
[3] Obsaint, supra, at ¶ 29-30, citing State v. Jells, (1990),53 Ohio St.3d 22, 559 N.E.2d 464, and modifying Lomax, supra; see, also,State v.Lomax, 114 Ohio St.3d 350, 2007-Ohio-4277.
[4] See id. at ¶ 30, citing State v. Davis, 8th Dist. No. 85152,2005-Ohio-2630, at ¶ 6 ("[a] bsent specific requirements like those listed in Crim.R.11, the manner in which the court determines the validity of a [jury-trial] waiver is quite flexible ").
[5] See McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 69,203 N.E.2d 334 (holding that a trial court's imposition of a sentence within the terms prescribed by a valid statute does not constitute cruel and unusual punishment); see, also, State v. Brewster, 1st Dist. Nos. C-030024 and C-030025, 2004-Ohio-2993, at ¶ 82.
[6] State v. Blevins, 152 Ohio App.3d 39, 2003-Ohio-1264,786 N.E.2d 515, at ¶ 32-¶ 35; Brook Park v. Danison (1996), 109 Ohio App.3d 529,532-533, 672 N.E.2d 722; State v. O'Shannon (1988), 44 Ohio App.3d 197,200-201, 542 N.E.2d 693; State v. Goins, 2nd Dist. No. 21077,2006-Ohio-989, at ¶ 13; State v. Dixon (May 28, 1993), 6th Dist. No. L-92-242; State v. Drake (Sept. 3, 1992), 10th Dist. No. 91AP-978;State v. Brown (Jan. 23, 1991), 9th Dist. No. 1916.
[7] State v. Weitbrecht, 86 Ohio St.3d 368, 371, 1999-Ohio-113,715 N.E.2d 167. *Page 1